UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DARRYL E., <br>       Plaintiff, <br><br>     v. <br><br> KILOLO KIJAKAZI, Acting Commissioner <br> of the Social Security Administration, <br>       Defendant. | ) <br> ) <br> ) <br> ) CAUSE NO.: 1:21-CV-261-JVB <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

Plaintiff Darryl E. seeks judicial review of the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter. For the reasons below, this Court grants Plaintiff's request, reverses the Administrative Law Judge's decision, and remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

In Plaintiff's December 6, 2018 applications for benefits, he alleged that he became disabled on November 25, 2018. After a November 3, 2020 hearing, the Administrative Law Judge (ALJ) issued her decision on November 25, 2020, and found that Plaintiff suffered from the severe impairments of multiple fractures of the thoracic spine status post fall, history of left lower extremity deep vein thrombosis, degenerative disc disease of the lumbar spine/spina bifida, major depressive disorder, alcohol use disorder, cannabis use disorder, borderline personality disorder, and anxiety disorder. (AR 17). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, crouch, and crawl, he can occasionally reach overhead with the bilateral upper extremities, he should avoid all exposure to wet, slippery or uneven surfaces, unprotected heights, and unguarded moving machinery, and he can occasionally operate foot controls with the bilateral lower extremities. In addition, the claimant can understand, remember and carry out simple instructions and tasks, he can make judgments on simple work-related decisions, he can respond appropriately to brief and superficial interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

(AR 19). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was unable to perform his past relevant work but was able to perform the representative occupations of document preparer, hand mounter, and semiconductor bonder. (AR 25). Accordingly, the ALJ found Plaintiff to be not disabled from November 25, 2018, through November 25, 2020, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [they] can perform [their] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error in her analysis by not finding the opinion of treating physician Dr. Tallon persuasive, by failing to account for all of Plaintiff's supported mental limitations, by relying on the testimony of the vocational expert (VE) when it diverted from the Dictionary of Occupational Titles (DOT), and by finding that the number of jobs identified by the VE is significant. The Court finds the argument regarding Dr. Tallon's opinion persuasive and remands this matter on that basis.

### A. Dr. Tallon's Opinion

The evaluation of medical opinions is governed by 20 C.F.R. §§ 404.1520c and 416.920c, which explain that ALJs must articulate how persuasive they find each medical opinion. When an ALJ evaluates medical opinions, the most important factors to consider are supportability and consistency, and the remaining factors are relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c, 416.920c. "Supportability" considers to what extent an opinion is based on objective medical evidence and supporting explanations. 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" considers to what extent an opinion is consistent with the evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ found Dr. Tallon's opinion "not at all persuasive," noting that it is internally inconsistent. (AR 23). The ALJ also noted that Dr. Tallon's opinion that Plaintiff cannot perform competitive, full-time work is a conclusion reserved for the Commissioner.

Dr. Tallon, who has treated Plaintiff since September 2019, opined that Plaintiff could stand for 20 minutes total in one workday and sit 80 minutes total in one workday, though she also placed an X next to "No" for the questions "Does the impairment/disability prevent the patient from standing for 6-8 hours?" and "Does the impairment/disability prevent them from sitting upright for 6-8 hours?" (AR 1225). The ALJ was correct to observe that these answers are internally inconsistent. Plaintiff notes that it is likely the case that the "X" was placed in the wrong box and that the other information is correct, but it is not for the Court to reweigh the evidence or resolve conflicts in the evidence, and the Court cannot fault the ALJ for disregarding this segment of the opinion for its inconsistency.

When asked, "In your opinion is the individual capable of sustaining work on a continuing basis," Dr. Tallon responded, "No." *Id.* Dr. Tallon further stated, "He can't work in a competitive 8hr/day, 5 day/week situation." *Id.* As the ALJ identifies, the question of whether Plaintiff can perform competitive, full-time work is reserved to the Commissioner and the ALJ was correct to not give any special significance to this point of Dr. Tallon's opinion as it "is inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

However, the ALJ's reasons for finding the rest of Dr. Tallon's opinion "not at all persuasive" are inadequate to create the necessary accurate and logical bridge.

4

Dr. Tallon opined that Plaintiff needed to lie down during the day to reduce the swelling in his legs, improve circulation, and relieve Plaintiff's back. (AR 1225). Dr. Tallon further stated that Plaintiff has difficulty with ambulation once his legs swell and additionally gave Plaintiff a 20 pound weight restriction. *Id.* Dr. Tallon noted that Plaintiff's impairments restrict him from performing certain motions such as reaching, lifting, pulling, and holding objects, adding he "cannot twist, cannot pull too much, and cannot push." *Id.* at 1225-26. Dr. Tallon reported that Plaintiff has difficulty bending, squatting, kneeling, and turning his body. *Id.* at 1226. When asked if Plaintiff suffers from chronic pain issues, Dr. Tallon indicated affirmatively for Plaintiff's left leg, lower and upper back, and sometimes headaches from his head injuries. *Id.* The type of pain varies, being sometimes sharp and sometimes dull. *Id.*

The ALJ found conflict between Dr. Tallon's opinion and Plaintiff's statements regarding his ability to perform activities of daily living. The ALJ reports that Plaintiff admitted "he could perform all activities of daily living, could dress himself, could tie his shoes, could sit, stand, and lie but alternated these positions due to pain." (AR 23). This severely mischaracterizes the record. Plaintiff reported that it takes longer for him to put his clothes on due to his impairments, he has difficulty getting into and out of a bathtub, his wife cares for his hair and shaves his face, whether he can use the toilet depends on if his back is in pain, he is no longer able to take care of pets, and he has to be verbally reminded daily to take medication. (AR 309-10). Plaintiff can do laundry every day, but it takes him the whole day. *Id.* at 310.

A social security claim is properly remanded if the ALJ has mischaracterized the evidence such that the necessary logical bridge between evidence and conclusion does not exist. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). That is what has happened here. The ALJ makes it appear that, other than

some postural issues, Plaintiff has no issues with his activities of daily living. Plaintiff's report, however, indicates that he cannot even consistently use the toilet, that he can no longer care for pets, and that he relies on his wife for some matters of grooming, among other issues.

Further, the ALJ states that Dr. Tallon's opinion that Plaintiff cannot travel alone is contradicted by Plaintiff's admission that he can travel alone. (AR 23). The ALJ cites Exhibit 14E in support. This exhibit is Plaintiff's function report, in which Plaintiff responded by checking the box next to "No" in response to the question "When going out, can you go out alone?" (AR 311). He further explained that he cannot go out alone because "[m]y anxiety gets really bad when I'm alone or in pain." *Id.* The ALJ is simply incorrect in stating that Plaintiff admitted to being able to travel alone in Exhibit 14E.

Moreover, the ALJ maintains that Dr. Tallon's opinion is "not supported by the inconsistent observations (or allegation) for foot drop, lack of atrophy, and the lack of the prescriptive use of an assistive device." (AR 23). The ALJ has not given any reason to tie Dr. Tallon's opinion to these pieces of evidence. Dr. Tallon did not say that any part of her opinion was due to Plaintiff's foot drop, atrophy, or use of a prescribed assistive device. The ALJ is not a medical professional and is not qualified to determine that foot drop, lack of atrophy, and failure to use a prescribed assistive device have any bearing on the matters Dr. Tallon opined to. There is no logical bridge here.

Therefore, the ALJ did not err in finding one part of Dr. Tallon's opinion internally inconsistent and in disregarding the opinion that Plaintiff cannot perform fulltime, competitive work. However, the ALJ did err in rejecting the remainder of Dr. Tallon's opinion, as that rejection depended on a mischaracterization of Plaintiff's report of his daily activities, a misstatement of Plaintiff's response regarding traveling alone, and the ALJ's lay opinion regarding the medical

significance of certain findings. There is no "accurate and logical bridge" from the evidence cited to the conclusions the ALJ drew from it. *See Thomas*, 745 F.3d at 806. This matter must be remanded for further administrative proceedings.

### B. Other Matters

The VE testified that a hypothetical person with Plaintiff's RFC could perform the representative occupation of document preparer. The VE clarified that the DOT job description mentions microfiche because that is the technology that was in use when the DOT was published. The VE clarified that the job now uses digitization instead of microfilming. The VE further testified,

> Essentially what the person does is sits at a desk area and they're just pulling out staples of the documents and they're making sure that they, if the documents have dog ears, tears that just straighten so when they are digitized, they go through a machine. So it it's, it's a simple process. And that's how I – *I've never seen the job performed*, so that's how I describe it.

(AR 64 (emphasis added)). The ALJ asked the VE what the VE's testimony was based on where it diverted from the DOT, and the VE responded that it was based on his education, knowledge, training, and experience. (AR 68).

Plaintiff argues that the VE's testimony regarding the document preparer position cannot be based on the DOT because it no longer uses microfilm technology and also asserts that it cannot be based on the VE's knowledge and experience because the VE testified to never seeing the job performed. The Commissioner responds that it is Job Browser, not the DOT, that conflicts with the VE's testimony. However, the DOT does refer to the job as "Document Preparer, Microfilming," and the VE testified that the occupation now involves digitization instead of microfilming. *See* 249.587-018 Document Preparer, Microfilming, DICOT 249.587-018, 1991 WL 672349 (G.P.O.); (AR 64 (VE testimony)). The Court need not decide if an error requiring remand occurred. Instead, the Court instructs that, if, on remand, the same issue arises, the ALJ

7

should ensure that a reasonable explanation is obtained for any VE testimony that conflicts with the DOT, and the ALJ should explain how the conflict was resolved. *See* SSR 00-4p, 2000 Wl 1898704, at *2 (Dec. 4, 2000)

Next, under the relevant regulations, "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. §§ 404.966(a), 416.1566(a). The Seventh Circuit Court of Appeals has clarified that regional or state numbers are not needed in making the "significant number" determination. *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015).

The ALJ, relying on VE testimony, identified three representative occupations, totaling an approximate 41,000 jobs in the national economy, which a hypothetical individual with Plaintiff's RFC could perform. (AR 24-25). Plaintiff contends that this is not a significant number of jobs.

In *James A. v. Saul*, this Court determined that 14,500 jobs in the national economy (which the VE testified were the *only* jobs available and not just the jobs of *representative* occupations), was not a significant number of jobs. 471 F. Supp. 3d 856, 859-60 (N.D. Ind. 2020). Despite Plaintiff's assertion, the Court in *James A.* did not adopt the rationale of the unpublished case of *Sally S. v. Berryhill*, No. 2:18-cv-460, 2019 WL 3335033 (N.D. Ind. July 23, 2019). Instead, *James A.* noted several cases that cast doubt on *Sally S. See, e.g.*, *James A.*, 471 F. Supp. 3d at 860 ("*Weatherbee* [*v. Astrue*, 649 F.3d 565 (7th Cir. 2011),] might give credence to the assertion that *Sally S.* is an outlier"; "The non-precedential opinion of *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019), decided after *Sally S.*, also casts doubt on *Sally S.*"). Instead, the *James A.* decision was based on the fact that the number of jobs—14,500—were "far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant"

Plaintiff proceeds to argue that because the number of jobs identified here are fewer than the number of jobs identified in *Sally S.* the case should be remanded. Again as in *James A.*, the Court is concerned that *Sally S.* is an outlier and does not accept the number of jobs in *Sally S.* as a definitive marker of what is and is not a significant number of jobs. Perhaps 41,000 jobs is close to the line of significance, as it falls somewhere between the numbers of jobs in *Sally S.* and *James A.*, but the matter is immaterial because this case is being remanded on other grounds. Further, unlike in *James A.*, there is no testimony that these 41,000 jobs were the only ones available to a person with Plaintiff's RFC.

In the interest of judicial economy and because there are sufficient grounds to remand this case, the Court declines to address Plaintiff's remaining arguments.

## CONCLUSION

Based on the above, the Court hereby **GRANTS** the relief requested in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 16], **REVERSES** the final decision of the Acting Commissioner of the Social Security Administration, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on August 29, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT